No. 25-1776

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

**KEISHA L. LEWIS**
**Plaintiff-Appellant,**

**v.**

**INDIANA DEPARTMENT OF TRANSPORTATION,**
**Defendant-Appellee.**

_____

**Appeal from The United States District Court**
**For the Southern District of Indiana, Indianapolis Division**
**No. 1:23-cv-01865-JMS-MJD**
**Honorable Jane Magnus-Stinson**

_____

## REPLY BRIEF OF THE APPELLANT

_____

> **MACEY SWANSON LLP**
> **Jeffrey A. Macey**
> **429 N. Pennsylvania Street**
> **Suite 204**
> **Indianapolis, Indiana 46204**
> **(317) 637-2345**
> **Attorney for the Appellant**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

I. INTRODUCTION   ..........................................................................1

II. ARGUMENT...................................................................................2

    A.    Sole Cause is Not the Standard for Discrimination and Retaliation Claims under the Rehabilitation Act   ...............................................2

        1.    This Court's Application of Causation Rules to the Rehabilitation Act is Inconsistent ...............................................................3

        2.    The Text of the Rehabilitation Act Explicitly Provides for the Use of ADA Standards in Employment Discrimination Claims...........................................................................6

    B.    The Quality of Keisha Lewis's Performance is a Disputed Issue of Fact........................................................................ 10

        1.    Objective Evidence Supports an Inference that Lewis's Performance Met the Reasonable Expectations of the Indiana Department of Transportation...........................................10

        2.    Evidence of Defendant's Complaints about Plaintiff's Performance is Not Sufficient to Entitle Defendant to Judgment as a Matter of Law........................................................ 10

    C.    Given the Disputed Issue of Material Fact on the Issues of Lewis's Performance and the Department of Transportation's State Reason for her Termination, her Rehabilitation Act and Title VII Claims Should Proceed............................................................................ 14

III. CONCLUSION   ........................................................................ 16

CERTIFICATES OF COMPLIANCE ...........................................................18

CERTIFICATE OF SERVICE ..................................................................19

## TABLE OF AUTHORITIES

**Cases**

*A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587 (7th Cir. 2018)………………………… 3, 5, 6

*A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279* 605 U.S. 335 (2025)……………..8

*Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003)………………………………6

*Brumfield v. City of Chi.*, 735 F.3d 619 (7th Cir. 2013)……………………………..3, 6

*Burks v. Wis. DOT*, 464 F.3d 744 (7th Cir. 2006)…..…………………………………5

*Conners v. Wilkie*, 984 F.3d 1255 (7th Cir. 2021)…..…………………………………4, 5

*Fuller v. McDonough*, 84 F.4th 686 (7th Cir. 2023)…..….…………………………4

*Hamilton v. GE*, 556 F.3d 428 (6th Cir. 2009)……………………………………… 10, 14

*Jones v. Potter*, 488 F.3d 397 (6th Cir. 2007)……………………………………………10

*Knapp v. Northwestern Univ.*, 101 F.3d 473 (7th Cir. 1996)……………………………5

*Kurtzhals v. City of Dunn*, 969 F.3d 725 (7th Cir. 2020)………………………………3, 7

*Manning v. DeJoy*, No. 23-2162, 2024 U.S. App. LEXIS 8345………………………………4

*Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997)………………..6

*Murphy v. Caterpillar Inc.*, 7th Cir. No. 24-1517, 140 F.4th 900 (June 18, 2025)

………………………………………………………………………………………14

*Natofsky v. City of N.Y.*, 921 F.3d 337 (2d Cir. 2019)………………………………….9

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)……………………………10

*Royan v. Chi. State Univ.*, 145 F.4th 681 (7th Cir. 2025)…..………………………4, 5

*Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016)………………………………………6

*Swain v. Wormuth*, 41 F.4th 892, 897 (7th Cir. 2022)…………………………………4, 5

*Vargas v. DeJoy*, 980 F.3d 1184 (7ᵗʰ Cir. 2020)..............................................................4

*Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006) ...................................................................................................................3, 6

## Statutes

29 U.S.C. § 794........................................................................................... *passim*

42 U.S.C. § 12112.................................................................................................7

42 U.S.C. § 12203.................................................................................................4

Public Law 93-113.................................................................................................7

Public Law 95-602.................................................................................................8

Public Law 100-259.................................................................................................8

## I.     INTRODUCTION

In her opening brief, Keisha Lewis showed how the district court erred in making a finding of fact that the reason for her termination was a backlog of work. Instead, at his deposition, her supervisor testified that he decided to terminate Lewis after she refused to perform a specific task. This was pretext (the task was designed for her to fail), and under the precedents of this Court and the Supreme Court, evidence of pretext is evidence sufficient to call into question the employer's stated reason for a termination and reach the jury.

In response, the Indiana Department of Transportation argued that the backlog of work was undisputed and thus, as a matter of law, a sufficient basis for the grant of summary judgment. Additionally, the Department of Transportation argued that Lewis's performance was so deficient that, as a matter of law, the Department is entitled to summary judgment. And it argued, relying on a recently decided case, that the Rehabilitation Act imposes a uniquely onerous causation standard on state employees, despite explicit instructions in the statute to apply the standards found in Title I of the Americans with Disabilities Act, which include the commonly applied "but for" causation standard in employment cases.

The Indiana Department of Transportation is incorrect as a matter of law. The Rehabilitation Act has been amended several times since its passage in 1973, and the 1991 amendment to the Act expressly incorporated Title I of the Americans with Disabilities Act's standards specifically for employment discrimination cases. These standards explicitly apply a causation standard that the court has interpreted to be "but for" causation. The Plaintiff also offered evidence sufficient to

create a disputed issue of material fact on the matter of her alleged performance deficiencies. From this evidence, including the absence of discipline and counseling prior to her exercise of a reasonable accommodation, her prior exceeds expectations performance review, her interim performance review, the negative change in her supervisor's conduct toward her after the exercise of her work-from-home accommodation, and evidence of pretext, a jury could find that the true motive for her termination was unlawful. Accordingly, the district court's grant of summary judgment should be reversed.

## II.   ARGUMENT

### A. Sole Cause is Not the Standard for Discrimination and Retaliation Claims under the Rehabilitation Act.

Keisha Lewis brought a claim against the Indiana Department of Transportation for, among other things, disability discrimination and retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504(d) (codified as 29 U.S.C. §794(d)) expressly applies the standards of Title I of the Americans with Disabilities Act "in a complaint alleging employment discrimination under this section." A review of the court's cases indicates that some decisions have found this language in tension with Section 504(a) of the Act, which under the heading "Promulgation of rules and regulations," requires that "No otherwise qualified individual with a disability in the United States, as defined [elsewhere in the Rehabilitation Act], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.SC. § 794(a). Some decisions

2

have indicated that this "solely by reason of his or her disability" language indicates that all of the ADA's standards apply except for the causation standards found in the same statute. *See Swain v. Wormuth*, 41 F.4th 892, 897 (7th Cir. 2022).

As a threshold matter, both parties before the district court agreed that the proper standard to apply was the ADA's "but for" causation standard. The Department of Transportation cited to *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020), an ADA case, for the standard. In fact, before the district court, the argument was not about the applicability of the proper causation standard, but whether the Plaintiff had a private right of action under the Rehabilitation Act and whether Plaintiff was a qualified individual with a disability. That said, in her brief before the district court, Lewis pointed out to the court that the causation issue had been flagged, citing to *Brumfield v. City of Chi.*, 735 F.3d 619, 630 (7th Cir. 2013), but noted that subsequent cases, including *A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018), which cited *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006), indicated that "Seventh Circuit has since made clear that, regardless of the different language in both statutes regarding causation, 'but for' causation is the required standard under both the Rehabilitation Act and Title I of the ADA." District Court Dkt. 62 at 17. The Defendant did not disagree.

### 1. This Court's Application of Causation Rules to the Rehabilitation Act is Inconsistent

Relying on the text of the statute itself, and disregarding the parties' positions, the district court determined that disability discrimination must be the "sole cause"

of exclusion from a federal program under the Rehabilitation Act. The district court's position found subsequent support from this Court in *Royan v. Chi. State Univ.*, 145 F.4th 681, 689 (7th Cir. 2025), which was decided while Plaintiff was preparing her opening brief in that case.  In *Royan*, the Court, citing to *Swain v. Wormuth*, 41 F.4th 892, 897 (7th Cir. 2022), acknowledged that the "Rehabilitation Act expressly incorporates the standards and procedures applicable to claims brought under the Americans with Disabilities Act." *Id.* The Court, however, noted that there was "an important exception" to this rule because the Rehabilitation Act had a "stricter causation requirement" that the Plaintiff's disability "must be the *sole* reason for the alleged discriminatory action; this contracts with the ADA, which requires only that the plaintiff's disability be a reason for the challenged action." *Id.* (citing *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (emphasis in the original).

Further confounding matters is the fact that this Court as recently as last year, relying on the same language of the Rehabilitation Act, 29 U.S.C. § 794(d), that incorporates the Americans with Disabilities Act into the Rehabilitation Act, confirmed that a "retaliation claim under the Rehabilitation Act is governed by the same standards applied to the Americans with Disabilities Act." *Manning v. DeJoy*, 2024 U.S. App. LEXIS 8345 at *5 (7th Cir. 2024) (citing *Vargas v. DeJoy*, 980 F.3d 1184, 1188 n. 4 (7th Cir. 2020)); *see Fuller v. McDonough,* 84 F.4th 686, 690 (7th Cir. 2023) (applying the same standards to retaliation under Title VII and the Rehabilitation Act). Of course there is no direct antiretaliation provision in the

4

Rehabilitation Act; the language prohibiting antiretaliation appears in the ADA at 42 U.S.C. § 12203, which provides that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this act…."

There are thus two lines of parallel cases in the Seventh Circuit, and three if we count the antiretaliation cases. Under the cases the Plaintiff cited in the district court, *A.H.* and *Wisconsin Cmty. Svs.*, which were not employment discrimination cases, the Seventh Circuit has applied the ADA. But in *Royan*, which was an employment discrimination case, the Seventh Circuit has not applied the ADA, even though the statute instructs its application explicitly in employment discrimination cases.[1] And, in antiretaliation cases, the ADA antiretaliation standard applies.

In *Royan*, this court relied on *Swain v. Wormuth*, which was a failure to accommodate claim brought by a civilian employee of the United States Army. 41 F.4th 892, 897 (7th Cir. 2022). In analyzing the Plaintiff's disparate treatment claim, the Court indicated that the "solely by reason" of language was "stricter than the causation standard in Title I of the ADA, which the Rehabilitation Act otherwise incorporates for its liability standards." *Id.* at 899 (citing *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021)). *Conners* was an employment discrimination case that did not turn on causation; the court there merely recited

---

[1] To confuse matters more, in *Burks v. Wis. DOT*, 464 F.3d 744, 755 (7th Cir. 2006), which is an employment discrimination case, the court cited *Knapp v. Northwestern Univ.*, 101 F.3d 473, 478 (7th Cir. 1996), for the "solely by cause of" standard, even though *Knapp* involved exclusion from athletic opportunities, not employment discrimination.

the standard with a citation to the text of the statute and a citation to *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). In *Brumfield*, this court held that there was a distinction between employees who are fired "solely by reason" of their disability compared to employees who are fired "for any reason other than that she is disabled," in which case there has been no violation of the Rehabilitation Act. The court cited to an ADA case for this proposition. *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997).

This line of cases does not match up with other cases applying the Rehabilitation Act outside the employment discrimination context that expressly incorporate all of the ADA's terms. *See A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018), *Steimel v. Wernert,* 823 F.3d 902, 909 (7th Cir. 2016); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006); *Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

### 2. The Text of the Rehabilitation Act Explicitly Provides for the Use of ADA Standards in Employment Discrimination Claims.

Contrary to the Defendant's argument, the text and structure of the Rehabilitation Act confirm Plaintiff's position. The Rehabilitation Act, Section 504(d), states that "[t]he standards used to determine whether this section has been violated in a complaint *alleging employment discrimination* under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 and the provisions of sections 501 through 504 and 510, of the Americans with Disabilities Act of 1990, as such sections relate to employment." 29 U.S.C. § 794(d) (emphasis added). And the "Discrimination" definition of the Americans with

6

Disabilities Act states that "No covered entity shall discriminate against a qualified individual *on the basis of disability* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (emphasis added). As the Court in *Kurtzhals* noted, the ADA Amendments Act of 2008 "changed the language of the statute from prohibiting discrimination 'because of' a disability to prohibiting discrimination 'on the basis of' a disability." *Kurtzhals*, 969 F.3d at 728. The Court further mused that this may in fact alter the "but for" standard, presumably by loosening it, but the Plaintiff has not been able to identify any case that has adopted an even lower burden of causation. Still, the causation language in the ADA is expressly incorporated into the Rehabilitation Act and contrary to the arguments of the Defendant, the causation standard was amended into the Rehabilitation Act after the passage of the ADA. The original causation language for the Rehabilitation Act was not somehow carved out of the incorporated ADA's definition.

The Rehabilitation Act, which was passed in 1973, originally contained the language found in Section 504 under the heading "Nondiscrimination under Federal grants": "No otherwise qualified handicapped individual in the United States, as defined in section 7(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Public Law 93-113- Oct.1 1, 1973 (Original Section 504 of the Rehabilitation Act). In 1978, Section 504

7

was amended again to expand the types of Programs available, require that the head of federal agencies subject to the law "promulgate such regulations as may be necessary to carry out the amendments to this section" and add "Federal Programs and Activities" to the Heading. Public Law 95-602, 92 Stat. 2982. In 1988, the Rehabilitation Act was expanded significantly to cover state and local governments, adding paragraphs (b) and (c) to Section 504. Public Law 100-259, 102 Stat. 29-30.

And in 1991, the language was added to Section 504 after passage of the ADA to incorporate the ADA elements of the employment discrimination claim into the Rehabilitation Act: "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 and the provisions of Sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990, as such sections relate to employment."

In other words, the Rehabilitation Act explicitly establishes the Americans with Disabilities Act as the framework for one type of claim under the Rehabilitation Act – employment discrimination.[2] Rather than imposing a restriction on a broader standard announced by the Americans with Disabilities Act, Congress expressly incorporated the Americans with Disabilities Act into the Rehabilitation Act for employment discrimination claims. There is no evidence in the text and history of

---

[2] The Supreme Court recently held that claims for denial of access to educational services under the Rehabilitation Act and Title II of the ADA should not have heightened requirements that do not apply "in other disability discrimination contexts." *A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025). Courts' interpretation of the Rehabilitation Act and the text of the statute itself offer very little support for the notion that claims for employment discrimination under the Rehabilitation Act requires a uniquely onerous standard.

the amended Rehabilitation Act that the Rehabilitation Act imposes any restriction on the standard imposed by the ADA. Indeed, the 1991 amendment is directly to the contrary.

The Second Circuit adopted this position in *Natofsky v. City of N.Y.*, which held that Section 794(d) "removes employment discrimination claims from the application of § 794(a)'s general causation standard and mandates the application of the ADA's causation standard." 921 F.3d 337, 345 (2d Cir. 2019). Employment discrimination is only one type of claim under the Rehabilitation Act, and it is only this type of claim that the Act indicates should proceed under the ADA standards. To apply the ADA standards in cases except employment discrimination claims contradicts the statute.

Given that this Court has not addressed the history of the statute, nor has it distinguished to date why certain of its cases indicate that a "sole cause" standard applies and others apply the common ADA standard, there are two parallel lines of precedent governing Rehabilitation Act cases. Based on the foregoing, the Court should choose the one that comports with the statute and expressly incorporates the Americans with Disabilities Act. The "sole cause" standard seems almost impossible to meet, precludes claims argued in the alternative, and improperly tips the scales in favor of a party arguing for summary judgment on that basis. Accordingly, the district court's reliance on that standard requires reversal.

**B.  The Quality of Keisha Lewis's Performance is a Disputed Issue of Fact**

  1.  Objective Evidence Supports an Inference that Lewis's Performance Met the Reasonable Expectations of the Indiana Department of Transportation.

Not a single piece of evidence in the record indicates that the Indiana Department of Transportation had any issue with Lewis's performance prior to her exercise of the work-from-home accommodation offered by Indiana's State Personnel Department. The evidence demonstrates that once Lewis exercised the accommodation, her supervisors began accumulating reasons to fire her. The timing in this case is stark, but not only is the timing evidence of discrimination, the Department of Transportation's heightened scrutiny of Lewis's performance after the request for accommodation and discrimination complaint, is evidence of discrimination. "[The Plaintiff's] case, however, does not rest on temporal proximity alone. Instead, [the Plaintiff] alleges that his bosses heightened their scrutiny of him after he [engaged in protected activity.]" *Hamilton v. G.E.,* 556 F.3d 428, 435 (6th Cir. 2009) (citing *Jones v. Potter,* 488 F.3d 397, 408 (6th Cir. 2007) (noting that employer cannot conceal an unlawful discharge by closely observing an employee and waiting for an ostensibly legal basis for discharge to emerge).

  2.  Evidence of Defendant's Complaints about Plaintiff's Performance is Not Sufficient to Entitle Defendant to Judgment as a Matter of Law

To find for a party as a matter of law, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.,* 530

U.S. 133, 150-51 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Thus, although the court should review the record as a whole, *it must disregard all evidence* favorable to the moving party that the jury is not required to believe." *Id.* (emphasis added).

In this case, there is substantial evidence that the attitude of Lewis's supervisors turned against her when she applied for and accepted the work-from-home accommodation offered by the state. This is supported by her February 21, 2022 "Exceeds Expectations" Review, [ECF 60-1], issued approximately ten months before her termination. In the review, Lewis was explicitly evaluated on a metric of how many parcels she cleared, and her manager gave her an "Exceeds" Rating on this specific issue. In that review, she also identified the issue that the Defendant now claims led to her termination. "I feel that being faced with the task of handling the Relocation department single handedly by myself and taking care all of the issues, concerns and problems that has arose with our relocation consultants handling their parcels and when the displacee's [sic] felt the need to seek out Central Office to help rectify issues that they felt the Relocation Consultants could not resolve." *Id.*

The change in attitude after she availed herself of the accommodation is also supported by the Interim Evaluation that Lewis provided to Foreman on August 15, 2022, shortly prior to her exercise of the work-from-home accommodation. In that

11

interim evaluation, Lewis indicated to Foreman that she was on track to meet her goals, and that she would continue to clear parcels at the rate outlined in her prior evaluation. Foreman provided no feedback whatsoever to this, except to confirm the accuracy of the facts Lewis provided to her in connection with the evaluation, to confirm that she was "on track." [ECF 60-2]

The very first indication of any alleged problems with Lewis's performance related specifically to her disability and occurred fifteen days after she exercised the work-from-home accommodation on September 1, 2022. On September 16, 2022, Foreman and Geibel instructed her to drive to the office, sit in her car at the curb, and stuff envelopes. This is the one task that she could not do at home. It is undisputed that the task was not assigned because of any extra burden to the Finance Department, but because Foreman became aware that Lewis was at an outdoor football game. [ECF 60-3 at 1; ECF 50-1 at 83; ECF 50-3 at 41-43]

In her communications with the State Personnel Department and Lewis herself, Foreman explicitly stated that she believed that a remote-work assignment is not appropriate for someone who could attend a football game. [ECF 60-3 at 1] According to Foreman, she "brought up the social media post about attending a homecoming football game out of state and the inconsistent message that sends regarding her sensitive health status and need to work remotely." [*Id.*] Because of this, Foreman demanded that Lewis ask her doctor to revise his statement justifying the accommodation. [*Id.*]

12

In other words, not only is the timing in this case suspicious, but the first indication of any unhappiness with Lewis is tied not to her performance at all, but to her attendance at the football game after she had sought and received the work from home accommodation. After that point, Foreman subjected Lewis to different work requirements from other employees, subjected her to heightened scrutiny, repeatedly examined and negatively characterized any off-work activities that Foreman believed Lewis was doing that were inconsistent with her accommodation, and began documenting reasons to terminate her. [*See, e.g.,* ECF 50-11, ECF 60-8]

Now, at this stage, the Defendant argues that an intervening event that formed an independent basis to terminate her was that its discovery of a "hard copy" parcel backlog[3]. First, as discussed in detail in Lewis's opening brief, the Indiana Department of Transportation never relied on the backlog as grounds for her termination at the district court and did not even refer to either the backlog of cases or the alleged $150,000 replacement cost as grounds for Lewis's termination in its summary judgment brief to that court. [Appellant Brief pp. 19-23]

Furthermore, evidence shows that Lewis was not hiding that she had a large workload; she indicated that she did in connection with her completed review and she herself reported to the State Personnel Department that Foreman was making clearing this backlog difficult. And, indeed, as Lewis drove to the office to stuff envelopes, one can understand why she believed that the interference in her work

---

[3] Importantly, the "hard copy" backlog was related to administrative work in closing out physical files that Lewis had been instructed to take home at the beginning of the COVID-19 related absence. [ECF 50-1 at 202] The work was not customer facing: Lewis was required to close the physical files and bring them back to the office for storage. *Id.*

was not in good faith, but retaliation for an exercise of the accommodation. The

existence of the backlog *supports* Lewis's claim. She was continually pushing back

on the assignment of extra duties – a new report that someone else already

generated, driving to the office to stuff envelopes – when she had plenty of real work

that needed to get done. [ECF 60-9 at 1] The record shows that Foreman was much

more concerned with forcing Lewis to perform these additional duties than assisting

her with clearing the work that the Department now alleges was the basis for her

termination.

### C. Given the Disputed Issue of Material Fact on the Issues of Lewis's Performance and the Department of Transportation's Stated Reason for her Termination, her Rehabilitation Act and Title VII Claims Should Proceed

This case largely turns on whether the stated reason the Indiana Department of

Transportation terminated Keisha Lewis was pretext. Subsumed in that issue is

whether alleged deficiencies in Lewis's performance were indisputably the grounds

for her termination. The foregoing section presents the evidence that Lewis's

performance was not the true basis for the termination, but in fact pretextual

reasons to justify an unlawful termination. And, indeed, the employer's decision to

subject Lewis to heightened scrutiny after her request for an accommodation was

itself evidence of discriminatory animus. *Hamilton*, 556 F.3d at 435.

In her opening brief, Lewis relied on *Murphy v. Caterpillar, Inc.*, for the

proposition that "evidence of pretext does not require but does permit an inference

of unlawful motive, meaning that summary judgment should be denied and the

ultimate question of motive given to the trier of fact to decide." 140 F. 4th 900, 915

(7th Cir. 2025). And, in the opening brief, as well as in the district court, Lewis laid out potential unlawful motives: disability discrimination under the Rehabilitation Act, retaliation under the Rehabilitation Act, race discrimination under Title VII, and retaliation under Title VII. The Department of Transportation appears to acknowledge that the Rehabilitation Act claims have sufficient support in Lewis's materials to proceed if she has sufficient evidence to meet the legal standard on those claims but challenges whether Lewis has sufficiently developed her Title VII claims.

Lewis concedes that the evidence is much more substantial on the disability issues. The precipitous decline in the way she was treated after she requested an accommodation and then complained about her supervisors' reaction almost compels a conclusion that the disability accommodation and complaint animated the subsequent hostility toward her by her supervisors.

But, as Lewis laid out in her opening brief, testimony by Geibel in his deposition should be considered by the jury to determine whether race discrimination and retaliation was afoot.  Geibel testified that he was looking for a reason to terminate her almost immediately upon taking over as her supervisor. Among his complaints was that she challenged his ability to run the department without a real estate license and that she had made a human resources complaint about him because she had received a smaller raise than a white employee. [ECF 50-2 at 10, 30-31, 24-35] Lewis summarized this testimony in her opening brief with citations to the record but Geibel testified that he wanted to terminate Lewis from "day one" but that he

15

was not allowed to because he "must follow the protocols and the rules of the State department, the personnel department." [ECF 50-2 at 31] When asked what the rule was that he could not discipline her for saying something "insubordinate or disrespectful to a manager," Geibel testified that it was "A very good question." [*Id.*] He was told by the personnel department to "let it go." [*Id.*] Combined with her later complaint about race discrimination, it is clear from his testimony that Geibel thought that Lewis was getting special treatment from the state personnel department because of her race. (At this time, she had not received the accommodation for her kidney condition). If this were the only piece of evidence of unlawful motive, this case would not be before the court. But, given the other evidence of pretext, Geibel's testimony is the closest thing in the record to a direct admission of motive. A jury should be allowed to consider it.

## III.    CONCLUSION

Lewis has offered sufficient evidence that her treatment after her request for accommodation and subsequent complaint was discriminatory and/or retaliatory and that her alleged deficient performance was a pretext for discriminatory and/or retaliatory termination under the Rehabilitation Act or Title VII. Applying the proper Rehabilitation Act standard, which comports with this court's recognized standards for discrimination, the Court should remand the case to the district court for a trial on the Rehabilitation Act and Title VII.

Respectfully submitted,

MACEY SWANSON LLP

/s/ Jeffrey A. Macey
Jeffrey A. Macey, Atty No. 28378-49
Attorney for Appellant Keisha Lewis

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,393 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12 font size and Century style.

/s/ Jeffrey A. Macey                                    Dated: December 10, 2025
Attorney for Keisha Lewis
Plaintiff-Appellant

CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I electronically filed the foregoing

with the Clerk of the Court using the Court's electronic filing system which sent

notification of such filing to all attorneys of record.

/s/ Jeffrey A. Macey
Jeffrey A. Macey
MACEY SWANSON LLP
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204
Phone: (317) 637-2345
Fax: (317) 637-2369
E-mail: jmacey@maceylaw.com